ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, NY 10004
Tel.: (212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ADAM THOMPSON,                                :

                              Plaintiff,    :    **Docket No:**

    -against-                        :

                                                  **JURY TRIAL DEMANDED**

WHITE PLAINS HOSPITAL MEDICAL    :
CENTER and DEAN AKBAR,

                       Defendants.   :

------------------------------------------------------------X

## COMPLAINT

Plaintiff Adam Thompson ("Plaintiff"), by and through his attorneys, Robert Wisniewski P.C., as and for his Complaint against the White Plains Hospital Medical Center ("WPH") and Dean Akbar ("Akbar"), states as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against WPH for disability discrimination in violation of the Americans With Disabilities Act, as amended (the "ADA"), i.e., 42 U.S.C.S. §§ 12101 *et seq.*

2.      Plaintiff also asserts claims against all Defendants under the New York Executive Law § 296 ("NYSHRL") for discrimination based on disability.

3.      Plaintiff was employed as a Senior MEP Project Manager at WPH, located at 20 Davis Avenue, White Plains, NY 10601 from about October 28, 2024 until his discriminatory termination on November 6, 2024.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff, a former employee of WPH, is a resident of the State of New York, Westchester County.

5.      At all relevant times, upon information and belief, WPH has been a domestic not-for-profit corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business within the State of New York, located at 20 Davis Avenue, White Plains, NY 10601.

6.      At all relevant times, WPH employed fifteen (15) or more employees, and thus, was Plaintiff's "employer" within the meaning of that term in the ADA and NYSHRL.

7.      At all relevant times, upon information and belief, Akbar has been and is residing in the State of New York, Westchester County.

8.      This Court has personal jurisdiction over WPH because it is domiciled in the State of New York and maintains its principal places of business within the state.

9.      This Court has personal jurisdiction over Akbar because he resides in the State of New York.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the ADA. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because those claims are intimately related to Plaintiff's federal claims and form part of the same case or controversy.

11.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district.

## PREREQUISITES

12.     Plaintiff filed a charge of discrimination against Defendants with the Equal

Employment Opportunity Commission ("EEOC") and received a Notice of the Right to Sue (the "Right to Sue Letter") concerning the charge.

## TRIAL BY JURY

13.     Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

14.     WPH is a hospital located at 20 Davis Avenue, White Plains, NY 10601.

15.     Plaintiff worked as a Senior MEP Project Manager at WPH from about October 28, 2024 until his discriminatory termination on November 6, 2024.

16.     Plaintiff was qualified for the position because of his previous experience working as an MEP manager, coordinator, and superintendent.

17.     An MEP (Mechanical, Electrical, and Plumbing) project manager oversees all aspects of a construction project related to mechanical, electrical, and plumbing systems, ensuring they meet design specifications, safety codes, and project deadlines

18.     Plaintiff suffers from Tourette's Syndrome and ADHD. He takes medication for his symptoms, but it does not affect nor interfere with his ability to work.

19.     As part of the hiring process, Plaintiff provided WPH with his psychiatrist's "Fit for Duty" letter, unequivocally confirming his abilities to perform the job's responsibilities.

20.     This proactive approach was met with initial positive feedback from Plaintiff's supervisor, Joseph Perillo, who recognized his competence and commitment.

21.     However, Plaintiff's situation took a troubling turn on November 4, 2024, during a mandatory New Hire Orientation.

22.     While listening to various speakers at the orientation, Plaintiff briefly exchanged text messages with his wife about urgent childcare arrangements. He was then abruptly confronted

by Akbar, the Assistant Vice President of Human Resources, demanding that Plaintiff put his phone away because he was "disrespecting" the speakers.

23.     Plaintiff immediately complied with Akbar's request, apologized for the interruption, and explained the urgent nature of his phone use.

24.     Despite Plaintiff's immediate compliance, apology and explanation, Akbar ordered Plaintiff to leave the orientation.

25.     During his discussion with Akbar, Plaintiff exhibited typical symptoms of Tourette's Syndrome: eye blinking, squinting, facial grimacing, twitching, and mouth movements. All of these were symptoms out of Plaintiff's control.

26.     Immediately after the orientation ended, Plaintiff met with Akbar to apologize again and reiterated the circumstances, seeking to resolve the misunderstanding amicably. Akbar assured Plaintiff that the matter was resolved.

27.     Plaintiff returned to the orientation and met with Mr. Perillo, who, to Plaintiff's utter shock, informed him that Akbar had escalated the issue to his supervisors.

28.     The following day, on November 5, 2024, Plaintiff met with Mr. Perillo and John Sanchez, the Director of Human Resources, who informed Plaintiff that Akbar remained upset and that "senior leadership" was looking into the matter.

29.     Akbar characterized Plaintiff's behavior as "confrontational" and falsely accused him of "making faces" at him. This accusation was a direct result of Plaintiff's Tourette's Syndrome, a disability he had openly disclosed to Defendants.

30.     Both Mr. Perillo and Mr. Sanchez expressed their disbelief, sharing with Plaintiff that they had never encountered a situation where an executive escalated such a trivial "incident" to senior management.

31.     On November 6, 2024, just two days after the incident with Akbar, WPH terminated Plaintiff from employment because he was allegedly "confrontational" and "making faces" at Akbar, with no further explanation provided.

32.     Adding insult to injury, WPH never gave any severance nor a signing bonus to Plaintiff, despite the clear terms outlined in its offer letter.

33.     Plaintiff's termination was flagrantly pretextual and, thus, discriminatory.

34.     Moreover, upon information and belief, WPH hired a non-disabled worker with less experience than Plaintiff as his replacement.

35.     As a result of the Defendants' discrimination against Plaintiff, Plaintiff has, and will likely continue to, suffer significant economic consequences, including lost back and front wages, as well as physical sickness and emotional distress.

36.     Defendants' acts of discrimination were malicious and wanton, and must be punished and deterred by imposing punitive and/or liquidated damages.

37.     Defendants' discriminatory termination of Plaintiff's employment due to his disability were intentional and in violation of the ADA and NYSHRL.

### FIRST CLAIM FOR RELIEF
**(Disability Discrimination in Violation of the ADA)**
***Against WPH***

38.     Plaintiff repeats and realleges each and every allegation previously set forth.

39.     Plaintiff is a person covered by and intended to benefit from the provisions of the ADA.

40.     Plaintiff is a qualified individual with a disability under the ADA.

41.     WPH violated the ADA, 42 U.S.C. § 12101, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision-making employees to engage in discriminatory

employment practices in which Plaintiff's disability was the motivating, if not the only factor.

42.     WPH's policies and practices resulted in Plaintiff being terminated from employment based on his disability. Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation. After Plaintiff informed WPH of his disability, WPH fired Plaintiff because of his disability.

43.     As a result of the WPH's conduct, Plaintiff has suffered, and continues to suffer damages, including but not limited to, emotional pain and suffering, as well as loss of past and future wages and benefits.

44.     As a direct and proximate result of the WPH's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the ADA, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination in Violation of the NYSHRL)
### *Against all Defendants*

45.     Plaintiff repeats and realleges each and every allegation previously set forth.

46.     Plaintiff was a qualified individual with a disability under the NYSHRL.

47.     New York Executive Law § 296(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's age, race, creed, color, national origin, sexual orientation, sex, disability... or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

48.     By and through its course of conduct as alleged herein, Defendants and their agents discriminated against Plaintiff by terminating his employment on the basis of disability in violation

of the NYSHRL.

49.     Defendants' conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

50.     Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation. After Plaintiff informed WPH of his disability, WPH fired Plaintiff because of his disability.

51.     Akbar engaged in unlawful discriminatory practices in violation of NYSHRL by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

52.     As a direct and proximate result of Defendants' illegal discrimination, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal and equitable remedies available under the NYSHRL, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against all Defendants as follows:

A.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B.  An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C.  An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.  An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.  Reinstatement to his position with all benefits and seniority;

F.  An award of punitive damages; and

G.  An award of costs and disbursements that Plaintiff incurred in this action, as well as Plaintiffs' attorneys' fees to the fullest extent permitted by law.

    Together with such other and further relief that the Court deems just and proper.

Dated:  New York, New York
        April 11, 2025

                                    ROBERT WISNIEWSKI P.C.


                            By: _/s/Robert Wisniewski_
                                Robert Wisniewski
                                *Attorneys for Plaintiff*
                                17 State Street, Suite 820
                                New York, NY 10005
                                Tel.: (212) 267-2101
                                Email: rw@rwapc.com